**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| AARON ROSS DAY,<br>Plaintiff,<br><br>v.<br><br>DAVID M. SCANLAN, in his official capacity as New Hampshire Secretary of State,<br><br>Defendant. | Civil Action No.<br>1:26-cv-00499-LM-AJ |

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER (TRO) AND MOTION FOR PRELIMINARY INJUNCTION

## Introduction

The Secretary of State has excluded a constitutionally qualified candidate for United States Senator from the 2026 ballot because a municipal board had not yet held a meeting. Plaintiff Aaron Ross Day satisfies every qualification the Constitution sets for the office: he is over thirty, a citizen for more than nine years, and will be an inhabitant of New Hampshire when elected. U.S. Const. art. I, § 3, cl. 3. The Secretary nonetheless refused his Declaration of Intent twice: first because his voter registration was in Bedford rather than Nashua Ward 3 (his new domicile), and again, after he cured that defect the very next day, because his completed Nashua registration "remains pending" until Nashua's Board of Registrars holds its next meeting, which, as of the second rejection, was not even scheduled.

At no point was Plaintiff unregistered. He was a registered New Hampshire voter throughout. When the Secretary's first rejection faulted his Bedford registration, he cured it the next day, completing his Nashua Ward 3 transfer and doing everything within his control. The Secretary then rejected him a second time on an entirely different ground, one never mentioned in the first rejection and found nowhere in RSA 655:17-a: that his completed registration "remains

pending" until a municipal board meets. This case is not, at bottom, about whether Plaintiff is qualified to serve; he plainly is. It is about whether a State may convert an internal administrative processing schedule into a qualification for federal office. It may not. The relief sought is modest: an order that the Secretary accept a one-page form so the candidate can attempt to gather 3,000 signatures like anyone else.

**Standard**

A preliminary injunction requires (1) likelihood of success on the merits, (2) irreparable harm, (3) a favorable balance of equities, and (4) consistency with the public interest. Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20 (2008). In the First Circuit, likelihood of success is the touchstone, particularly in constitutional cases. The same factors govern a TRO.

The relief Plaintiff seeks is properly understood as prohibitory, not mandatory. The status quo before the Secretary's intervention was a candidate who was a continuously registered New Hampshire voter and who filed a Declaration of Intent within the filing period. The Secretary disturbed that status quo by grafting onto RSA 655:17-a a supervisor-approval requirement the statute does not contain. Plaintiff therefore asks the Court first to enjoin the Secretary from applying that non-statutory requirement, which restores the status quo, and only in the alternative to compel acceptance. To the extent the Court treats any part of the relief as mandatory, Plaintiff satisfies the heightened standard as well: where the rejection rests on a requirement that appears nowhere in the governing statute, Plaintiff's entitlement is clear, not merely probable.

**Argument**

**I. Plaintiff is likely to succeed on the merits.**

The Court can grant the narrow relief Plaintiff seeks on more than one independent ground, and it need not reach the constitutional question to do so. The Secretary rejected Plaintiff's

Declaration on the basis of requirements that appear nowhere in New Hampshire law (Subsection A), and in a manner that treats identically situated candidates differently based solely on a municipal board's meeting calendar (Subsection B). Either defect, standing alone, supports the requested relief. The constitutional rule that a State may not add qualifications for federal office (Subsection C) provides a further and independent basis.

**A. The Secretary's rejections rest on requirements that do not exist in New Hampshire law.**

The narrowest defect requires no constitutional ruling at all: the Secretary twice rejected Plaintiff's Declaration on grounds the governing statutes do not contain. And when Plaintiff promptly cured the first stated defect, the Secretary did not accept the filing; he raised a second objection that appeared nowhere in the first rejection or in RSA 655:17-a.

The June 11 rejection asserted that "June 2, 2026, was the last day for you to register as a voter at your current domicile prior to the opening of the candidate filing period." No statute imposes that deadline. RSA 654:32, the provision the Secretary's office invoked, schedules a supervisors' session "for the change of registration of legal voters as provided in RSA 654:34 or 654:34-a," provisions governing party-affiliation changes. The Secretary's own official X account confirmed as much, announcing June 2 as "the deadline to change party affiliation." Exhibit 8. RSA 654:8 permits registration with the city clerk year-round, with a cutoff only at "the last meeting of the supervisors of the checklist before an election," and no election preceded the close of the filing period.

The June 12 rejection rested on a different invented requirement: that Plaintiff's completed and accepted registration "remains pending" until the Nashua supervisors of the checklist convene to approve it. RSA 655:17-a conditions a Declaration of Intent on the candidate being a registered voter; it says nothing about supervisor approval, and nothing about a registration being deemed "pending" until a board meets. To the contrary, New Hampshire's registration scheme confirms that a qualified applicant becomes a registered voter upon submission and

acceptance of a proper application, not upon a later ratification meeting. RSA 654:7 prescribes the qualifications and the standard registration form, including the very "TRANSFER" option Plaintiff used to move his domicile within the State; it nowhere conditions registration on subsequent board approval. RSA 654:7-a and 654:7-b put the point beyond dispute: a person who registers at the polling place becomes a registered voter the instant officials determine he is qualified, and remains registered "at all subsequent town, city, school district, village district, state, and federal elections" unless removed, with no supervisors' meeting required at all. If a registration took legal effect only upon a later approval meeting, election-day registration could not function as the statute provides. Plaintiff had been a continuously registered New Hampshire voter under Voter ID 300205248, his long-standing voter identification number from his prior registration in Bedford, and his registration had never lapsed. On June 11 the City of Nashua did not assign him a new registration; it moved that existing registration to the Nashua Ward 3 checklist, under the same Voter ID, to reflect his new domicile. Exhibit 3. Plaintiff did not become a registered voter at that moment; he had been one all along, within the meaning of RSA 655:17-a.

The Secretary also gave no notice of the approval requirement he enforced. Neither RSA 655:17-a, nor the Secretary's filing instructions, nor the Secretary's own "Qualifications for Office" page (Exhibit 5) told candidates that "registered" meant "registered and later approved at a board meeting that might not be scheduled before the filing period closes." The Secretary announced that distinction for the first time in the act of rejecting Plaintiff, after the asserted deadline had passed. A federal court need not defer to an agency's atextual, unannounced construction of state law invoked to defeat a federal constitutional right, and this Court may resolve the case on that ground alone.

**B. The denial violates equal protection because eligibility for federal office turns on a municipal board's meeting schedule.**

The Secretary's construction produces arbitrary results among identically situated candidates. Two people who do exactly the same thing reach opposite outcomes based solely on when their town's supervisors of the checklist happen to meet. A candidate who transferred a Nashua registration before the Board's June 2 meeting would be "registered" and eligible; Plaintiff, who completed the identical transfer on June 11, is deemed "pending" and ineligible, because the Board had nothing further scheduled. Nashua's meeting history shows intervals running from roughly five weeks to three and one half months. Exhibit 7. Nothing distinguishes the two candidates except a calendar neither of them controls. Conditioning access to the United States Senate ballot on so arbitrary a circumstance, one bearing no rational relationship to any legitimate state interest, denies equal protection of the laws. U.S. Const. amend. XIV, § 1. Put plainly: under the Secretary's view, whether a citizen may run for the United States Senate depends on when his town's supervisors happen to schedule their next meeting. No legitimate state interest turns on that calendar.

**C. The registered-voter requirement adds a qualification for United States Senator that the Constitution forbids.**

Even assuming, arguendo, that RSA 655:17-a could be read to require supervisor-approved registration before a Declaration of Intent may be filed, a reading Subsection A demonstrates is unsupported by the statute's text, the rejection would still be unlawful under the Qualifications Clauses. Plaintiff does not ask this Court to interpret New Hampshire law differently than New Hampshire courts would; he argues that even accepting the Secretary's interpretation, applying that requirement to a candidate for United States Senator violates the Qualifications Clauses. The Secretary enforced what he understood state law to require; the constitutional defect lies in the requirement, not in the official who applied it.

The Qualifications Clauses fix the exclusive qualifications for congressional office. "[T]he text and structure of the Constitution, the relevant historical materials, and, most importantly, the 'basic principles of our democratic system' all demonstrate that the Qualifications Clauses were

intended to preclude the States from exercising any such power and to fix as exclusive the qualifications in the Constitution." U.S. Term Limits, Inc. v. Thornton, 514 U.S. 779, 806 (1995). The principle traces to Powell v. McCormack, 395 U.S. 486, 547 (1969): "that the people should choose whom they please to govern them."

Thornton also forecloses the State's likely rejoinder that this is mere ballot-access procedure: "allowing States to evade the Qualifications Clauses by 'dress[ing] eligibility to stand for Congress in ballot access clothing' trivializes the basic principles of our democracy that underlie those Clauses." 514 U.S. at 831.

Applying Thornton, the courts of appeals have struck down precisely the requirement at issue here:

- Campbell v. Davidson, 233 F.3d 1229, 1235 (10th Cir. 2000), invalidated Colorado's requirement that congressional candidates be registered electors: "the requirement of registration is a substantive requirement that impermissibly imposes qualifications upon would-be candidates."

- Schaefer v. Townsend, 215 F.3d 1031, 1037, 1039 (9th Cir. 2000), invalidated California's requirement that House candidates be registered voters (and thus residents) at filing: "states do not have the power to add to or alter the requirements enumerated in the Qualifications Clause."

- Texas Democratic Party v. Benkiser, 459 F.3d 582, 589 (5th Cir. 2006), held that a candidate "must only be an inhabitant of the state 'when elected,'" and that a state officer who demanded residency before the election "unconstitutionally created a pre-election inhabitancy requirement."

- Dillon v. Fiorina, 340 F. Supp. 729, 731 (D.N.M. 1972) (three-judge court), struck such a scheme as applied to a candidate for United States Senator: the scheme "adds an

impermissible requirement . . . to the qualifications for United States Senator and is therefore void."

Every federal court to directly consider a registered-voter or pre-election residency requirement for congressional candidates has rejected it. The question is one of first impression in this Circuit, and the directly on-point authority elsewhere is uniform.

The constitutional timing point decides this case. Article I, Section 3 requires inhabitancy "when elected," that is, on November 3, 2026. The Secretary demands ward-level voter registration, finally processed, by June 2, 2026, five months earlier, as a condition of candidacy. If California could not require residency at the time of filing (Schaefer), and Texas could not require it before election day (Benkiser), New Hampshire cannot require completed, supervisor-approved, ward-specific voter registration before its filing period even opens.

The Secretary's own publications concede the rule. His "Qualifications for Office" page recites, for United States Senator, only age, citizenship, and "when elected, be an inhabitant of New Hampshire (Article 1, section 3 of the Federal Constitution)," while expressly listing "a registered voter" for Governor, Executive Councilor, State Senator, State Representative, and County Officer, the offices whose qualifications state law may set. Exhibit 5.

**D. Independently, the requirement as enforced fails Anderson-Burdick.**

Even treated as an election regulation rather than a qualification, the requirement fails the framework of Anderson v. Celebrezze, 460 U.S. 780, 788-89 (1983), and Burdick v. Takushi, 504 U.S. 428 (1992). A court must weigh "the character and magnitude of the asserted injury" against "the precise interests put forward by the State."

The burden here is the most severe possible: total exclusion from the ballot. Against that, the State has nothing of weight. Plaintiff was a continuously registered New Hampshire voter throughout, under the same Voter ID 300205248 he has held since his prior registration in Bedford, his Nashua Ward 3 domicile is undisputed, and on June 11 the City of Nashua moved

that existing registration to its Ward 3 checklist. Exhibit 3. The State's interests in verifying identity and domicile were fully served. Insisting that a ministerial approval meeting occur first serves no legitimate interest that could justify excluding a qualified candidate from federal office. A burden this severe, supported by interests this insubstantial, cannot survive the scrutiny that Anderson-Burdick demands.

**E. Neither the Ballot Law Commission's decision nor RSA 665:7 limits this Court's review.**

The controversy is ripe and the state forum is exhausted. The Ballot Law Commission decided Plaintiff's administrative appeal on June 29, 2026, denying it by a vote of 4 to 1, and Plaintiff brings this action the same day. That decision is both divided and unexplained: the Commission's Chairman, who authored its prior decision addressing the same registration question (In re Appeal of Benjamin Weir, BLC 2022-5), voted to grant relief, and as of the date of this filing the Commission has issued no written opinion construing RSA 655:17-a. This Court reviews Plaintiff's federal constitutional claim de novo and owes no deference to an unexplained, divided administrative determination.

RSA 665:7 declares Ballot Law Commission decisions "final as to questions both of law and fact, and no court shall have jurisdiction to review such decision." Whatever effect that provision has on state-court review, it cannot defeat federal jurisdiction over federal constitutional claims. State law cannot contract the jurisdiction conferred on federal courts or immunize state action from review under 42 U.S.C. § 1983. Howlett v. Rose, 496 U.S. 356, 367-71 (1990); Felder v. Casey, 487 U.S. 131 (1988). Nor does the Rooker-Feldman doctrine apply: it bars review of state-court judgments, not the determinations of state administrative bodies. Verizon Md. Inc. v. Public Serv. Comm'n of Md., 535 U.S. 635, 644 n.3 (2002). Plaintiff's constitutional challenge to the Secretary's enforcement of RSA 655:17-a is properly before this Court regardless of the administrative outcome. Nor do the abstention doctrines apply. This is not a request to enjoin a pending state criminal or quasi-criminal proceeding

(Younger v. Harris, 401 U.S. 37 (1971)); it does not turn on an unsettled question of state law that a state court could construe to avoid the federal issue (Railroad Commission of Texas v. Pullman Co., 312 U.S. 496 (1941)); and it implicates no complex state administrative scheme of the kind that calls for federal deference (Burford v. Sun Oil Co., 319 U.S. 315 (1943)). Indeed, Plaintiff does not ask this Court to interpret New Hampshire law differently than New Hampshire courts; he argues that even accepting the Secretary's interpretation of RSA 655:17-a, its application to a candidate for United States Senator violates the United States Constitution. That concession removes any unsettled state-law question on which Pullman abstention could rest.

**II. Plaintiff faces irreparable harm.**

The loss of constitutional rights "for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373 (1976). Exclusion from the ballot cannot be remedied by damages: once the nomination-papers window closes and ballots are printed, the candidacy, the volunteers' signature-gathering, and the associational rights of the voters who would support Plaintiff are extinguished for the entire election cycle. An election, once held, cannot be re-run; a candidacy wrongly kept off this year's ballot is lost for this cycle, and no later judgment can restore it. The injury is the more compelling because Plaintiff did nothing wrong: he remained a registered New Hampshire voter throughout, completed every step within his control, and is excluded only by a board meeting that has not occurred. Each week of uncertainty also concretely impairs signature collection, since signers and circulators cannot know whether their efforts will count toward the August 5 deadline. That loss is concrete and accruing now: under RSA 655:43, II the Secretary may not place Plaintiff on the ballot unless his Declaration of Intent is on file, so every hour Plaintiff's volunteers spend gathering signatures, and every elector who signs his nomination papers, is labor the Secretary will refuse at the filing gate so long as the rejection stands, void the moment it is collected and impossible to recover once the August 5 deadline passes. Plaintiff's state administrative

remedy is now exhausted: the Ballot Law Commission denied his appeal on June 29, 2026, leaving this Court as the only avenue to preserve his candidacy before that deadline.

**III. The balance of equities and the public interest favor relief.**

The requested order costs the State nothing: it directs acceptance of a one-page form and lets the ordinary nomination-papers process run. Plaintiff still must gather 3,000 valid signatures; the injunction guarantees him no place on the ballot, only the chance to earn one. By contrast, denial extinguishes a federal constitutional right. Enforcement of constitutional rights is always in the public interest, and so is resolving ballot-access disputes early in the calendar, months before ballots print, rather than on the eve of the election. Plaintiff filed his first declaration on June 10, cured within one day, appealed administratively the same week, and brought this action promptly. There is no laches and no Purcell problem; this is exactly when such cases should be decided. Nor can the Secretary fault Plaintiff for not transferring his registration sooner. No statute set an earlier deadline: RSA 655:17-a requires only that a candidate be "a registered voter," which Plaintiff was at all relevant times, and the June 2 date the Secretary invoked is the deadline to change party affiliation under RSA 654:32, a provision that has no application to an undeclared candidate filing a Declaration of Intent. The only deadline the law actually imposed on Plaintiff was the close of the filing period, and he met it. A candidate cannot be charged with "delay" for failing to meet a deadline the statute never set.

Acceptance of the Declaration is the operative relief because it is the one condition that keeps Plaintiff off the ballot. RSA 655:43, II forbids the Secretary from placing a nomination-papers candidate on the general-election ballot unless a Declaration of Intent is on file, while the certification of each signature is performed independently by the supervisors of the checklist of the signer's own town or ward under RSA 655:41, without reference to the candidate's Declaration. The Secretary therefore cannot avoid this dispute by suggesting that Plaintiff may simply gather signatures and seek acceptance later: without the Declaration on file, the certified papers Plaintiff submits will be refused at the filing gate, and the signatures, and the

labor of the voters and volunteers who produced them, will be lost.

This Court has granted comparable ballot-access relief against state officials. In Libertarian Party of New Hampshire v. Sununu, 2020 DNH 133, No. 1:20-cv-00688-JL (D.N.H. July 28, 2020) (Laplante, J.), the Court granted a preliminary injunction easing New Hampshire's nomination-paper requirement, reducing the signature threshold by thirty-five percent, where the State's interests did not outweigh the burden the requirement imposed on ballot access under the conditions then present. The relief Plaintiff seeks here is narrower still: not a reduction in the number of signatures, but only acceptance of a timely Declaration of Intent so that Plaintiff may attempt to gather the required signatures at all.

**IV. No bond should be required.**

Rule 65(c) security should be waived or set at zero. The Defendant faces no monetary injury from accepting a declaration of intent, and bond requirements are routinely waived for indigent or public-interest constitutional claims.

**Conclusion**

The Court should issue a temporary restraining order and preliminary injunction directing the Secretary of State to accept Plaintiff's June 12, 2026 Declaration of Intent for United States Senator as timely filed, and to process his candidacy and nomination papers on equal terms with all other candidates.

Respectfully submitted,

______________________________

Aaron Ross Day, pro se
34 Franklin St, Ste 325
Nashua, NH 03064
617-669-2187
ard@day2026.com
Dated: June 30, 2026