**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

AARON ROSS DAY,
  Plaintiff,

  v.

DAVID M. SCANLAN, in his official capacity as New
Hampshire Secretary of State,

  Defendant.

Civil Action No.
1:26-cv-00499-LM-AJ

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF HIS MOTION
FOR PRELIMINARY INJUNCTION (Doc. 6)**

*(Filed pursuant to the Court's July 6, 2026 endorsed order, which permits Plaintiff to file briefing in addition to the material already submitted; hearing set for July 15, 2026 at 11:00 a.m.)*

Plaintiff incorporates by reference his previously filed Verified Complaint (Doc. 1) and his Memorandum of Law and Declaration of Aaron Ross Day with Exhibits (Doc. 6). This supplemental memorandum does not restate or replace those filings; it addresses directly the question the Court identified in its July 6, 2026 order: whether *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779 (1995), controls. Nothing in this supplemental memorandum narrows, waives, or supersedes any claim, argument, or ground for relief set out in the Complaint or the incorporated Memorandum of Law, including the equal-protection and statutory arguments addressed there.

**Introduction**

The qualifications the United States Constitution sets for United States Senator do not include a ward-registration ratification meeting, and New Hampshire's Secretary of State may not add one by rejecting a form. No statute says a supervisors' board must approve a registration transfer before a Declaration of Intent may be accepted. No case allows it. The Constitution

forbids it. The cost of that error is not the Secretary's to bear. It falls on the New Hampshire voters who would have decided for themselves whether Plaintiff belongs in the United States Senate, and who now cannot, because the Secretary barred him from the ballot before they had the chance.

The material facts are set out in the Verified Complaint and are not in genuine dispute, a posture the Secretary's July 9 Notice of Stipulations now confirms (Doc. 7), and the Court has framed the motion as a pure question of law. Plaintiff is over thirty, a citizen for more than nine years, and will be an inhabitant of New Hampshire when elected, every qualification the Constitution imposes for United States Senator. U.S. Const. art. I, § 3, cl. 3. Plaintiff held a single Voter ID since his prior registration in Bedford; on June 11, 2026, within the filing period, the City of Nashua transferred that registration to Ward 3. The Secretary refused Plaintiff's Declaration anyway, because the Ward 3 supervisors had not yet met to ratify a transfer that New Hampshire law already treats as complete.

The Court has directed the parties to address whether *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779 (1995), controls this case. It does. The question is not how heavy a burden the Secretary's rule imposes; it is whether the Secretary may impose a qualification for the United States Senate at all. He may not, and that answer decides this case before any balancing begins. Part III confirms this reading: the Secretary's own registration statutes contain no supervisor-ratification requirement, so the qualification the Secretary imposes is not a plausible construction of state law this Court must respect. It is the Secretary's own atextual gloss on RSA 655:17-a, adopted for the first time in the act of rejecting Plaintiff. The four-factor preliminary-injunction standard is set out in Plaintiff's incorporated Memorandum, *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008); on this record the first factor reduces to the single legal question addressed here. Whatever ground the Court reaches it on, every part of this brief turns on the same question the Framers fixed in the Qualifications Clauses: whether the people of New Hampshire, and not a municipal board's

calendar, decide who represents them in the United States Senate.

**The Secretary's July 9 Stipulations Narrow This Motion to the Question of Law Already Before the Court**

On July 9, 2026, the Secretary filed his Notice of Stipulations (Doc. 7). Four of them matter here.

First, the Secretary agrees the case is ready for decision. He states that "there is sufficient factual agreement between the parties to proceed without fact discovery and to resolve this matter through motion practice." Doc. 7 at 6. The parties are now aligned on posture: no discovery, no evidentiary hearing, one question of law.

Second, the Secretary has stipulated the fact at the center of the irreparable-harm analysis. He stipulates that the Nashua Board of Registrars met on June 2, 2026, acted on all pending applications, and, upon information and belief, "did not subsequently meet between June 3 and June 12, 2026," the entire statutory filing window. Doc. 7 at 4-5. And on the Secretary's own construction of the registration statutes, no applicant "will become a registered voter unless and until the supervisors of the checklist in a public meeting review the application and rule that the applicant is qualified to register to vote." Doc. 7 at 3. That construction appears nowhere in the text of RSA 655:17-a or any related registration statute; Part III addresses it directly. Put together, the Secretary's stipulations establish that once Plaintiff submitted his June 11 transfer, no act available to him could obtain the board action Defendant says was indispensable before the June 12 filing deadline: the Board had already met on June 2, 2026, and, on Defendant's own account, did not meet again at any point before the window closed. A rule that makes timely candidacy depend on a meeting the candidate cannot compel, schedule, or complete by his own effort is not a regulation of the election. It is exclusion.

Third, the Secretary stipulated to paragraphs 15 and 16 of the Complaint in full. Doc. 7 at 2. He thereby stipulates that his office's June 11 rejection asserted that "June 2, 2026, was the last

day for you to register as a voter at your current domicile prior to the opening of the candidate filing period on June 3," relying on RSA 654:32. He also stipulates that RSA 654:32 imposes no such deadline; by its terms, it schedules sessions for changes of party affiliation. The stated legal basis for the first rejection is now conceded to be nonexistent. All that remains is the ratification-pending theory: that a completed transfer "remains pending" until a municipal board meets to ratify it. That theory is the added qualification Parts I through III address. And it is the only theory left to answer: the Secretary's own filing sets out both the June 11 and June 12 rejection emails, and both gave the identical sole reason, non-registration in Nashua Ward 3 under RSA 655:17-a. Doc. 7 at 4. Whatever else the Secretary raises now, it was not the ground on which he acted, and it cannot justify that decision after the fact.

Fourth, the Secretary's own account forecloses any suggestion that this dispute is unripe or the rejection merely provisional. By the Secretary's own explanation in Doc. 7, his office told Plaintiff that each declaration, his initial June 10 filing and his June 12 refiling, "had been denied." Doc. 7 at 3-4. There is no pending administrative process for this Court to await. The rejection under review is final.

Defendant's Notice includes one further stipulated point that deserves a brief response. Defendant stipulates that the Bedford Supervisors of the Checklist "began the process" of removing Plaintiff from that checklist on June 2, 2026, under RSA 654:39. Doc. 7 at 2. Even accepting that stipulated fact, it does not establish what Defendant needs it to establish: RSA 654:39, III bars striking any name from a checklist unless notice has been sent to the voter's last-known address at least thirty days before the strike, with a reasonable opportunity to reregister, so a process that "began" June 2 could not lawfully complete before early July, and on Defendant's own account Plaintiff remained a registered New Hampshire voter throughout the June 3 through 12 filing window. The point is offered only in response to that stipulation and only in the alternative: for the reasons set out in Part I, registration status is not a lawful qualification for United States Senator, and this Court need not resolve it to grant relief.

**Argument**

**I. The dispositive question is antecedent, and it resolves in Plaintiff's favor.**

**A. Added qualifications for Congress are void categorically; courts do not weigh them.**

The Qualifications Clauses are the exclusive source of eligibility for Congress. The Constitution's text, structure, and history, and "most importantly, the basic principles of our democratic system," were "intended to preclude the States from exercising any such power and to fix as exclusive the qualifications in the Constitution." *Thornton*, 514 U.S. at 806. The principle traces to *Powell v. McCormack*, 395 U.S. 486, 547 (1969): the rule guarantees "that the people should choose whom they please to govern them."

The consequence is categorical. When a state condition is a qualification for the office, it is void, and the court does not proceed to weigh the State's interests against the candidate's burden, because the State had no power to impose the condition in the first place. That is what "antecedent" means here: the *Anderson-Burdick* balancing test governs procedural regulations of elections; it does not govern additions to the constitutional qualifications for office. The threshold question is not how heavy the burden is. It is whether the requirement is a qualification. If it is, the inquiry ends.

**B. Thornton and Cook v. Gralike separate who may run from how the election is conducted, and this rule falls on the wrong side.**

The Secretary's only escape from *Thornton* is to relabel a ward-registration condition as an ordinary rule for administering elections. *Thornton* forecloses that move: "allowing States to evade the Qualifications Clauses by 'dress[ing] eligibility to stand for Congress in ballot access clothing' trivializes the basic principles of our democracy that underlie those Clauses." 514 U.S. at 831.

*Cook v. Gralike*, 531 U.S. 510 (2001), draws the line the Secretary must cross and cannot. The Framers understood the Elections Clause "as a grant of authority to issue procedural regulations, and not as a source of power to dictate electoral outcomes, to favor or disfavor a

class of candidates, or to evade important constitutional restraints." *Id.* at 523. A rule that governs *how* the election is conducted is procedural. A rule that governs *who may run* is a qualification. The registration-synchrony condition does not set the time, place, or manner of the election. It decides who is eligible to enter it, and it turns that eligibility on the meeting calendar of a five-member municipal board. It is a qualification, and it is void.

**C. Campbell v. Davidson struck down this exact requirement twice over: as a categorical qualification, and, independently, under Anderson-Burdick balancing.**

The Secretary asks this Court to treat candidate registration as a harmless administrative formality. A court of appeals has already rejected that argument on materially stronger facts. Applying *Thornton*, the Tenth Circuit invalidated Colorado's requirement that a congressional candidate be a registered voter, holding that "the requirement of registration is a substantive requirement that impermissibly imposes qualifications upon would-be candidates." *Campbell v. Davidson*, 233 F.3d 1229, 1235 (10th Cir. 2000). The court drew the precise distinction that decides this case: voter registration is an administrative process that facilitates participation, but "the registration process for a candidate adds to a candidate's qualifications." *Id.* The Secretary will likely answer that ward-registration, like registration generally, is only an administrative process that facilitates participation, the very characterization *Campbell* rejected for the requirement it struck. But a facilitative step is something a candidate can complete by his own effort: filing a form, mailing a card, appearing in person. Here, on the Secretary's own construction of the registration statutes, only a five-member board's public meeting completes the process the Secretary demands, Doc. 7 at 3, and the Secretary stipulates that board did not meet at any point in the window, Doc. 7 at 4-5. No effort of Plaintiff's could substitute for that meeting. A status a candidate is powerless to obtain through his own effort is not a facilitative step. It is a qualification. Campbell did not need to choose between frameworks: it held the requirement void on that ground, and, weighing the same facts under *Anderson-Burdick*, held it independently failed balancing too. See Part II.C, infra.

Every other federal court to consider a registration or pre-election residency condition for congressional candidacy has struck it down, and none has upheld one. Those decisions rest on the timing the Constitution fixes: a candidate must be an inhabitant only "when elected." *Schaefer v. Townsend*, 215 F.3d 1031, 1039 (9th Cir. 2000) ("states do not have the power to add to or alter the requirements enumerated in the Qualifications Clause"); *see also Texas Democratic Party v. Benkiser*, 459 F.3d 582, 589 (5th Cir. 2006) (a candidate "must only be an inhabitant of the state 'when elected'"); *Dillon v. Fiorina*, 340 F. Supp. 729, 731 (D.N.M. 1972) (three-judge court) (a pre-election residency scheme "adds an impermissible requirement" to the qualifications for United States Senator "and is therefore void"). *Campbell* supplies the registration holding; these cases supply the timing principle that makes a pre-filing registration condition an addition to a "when elected" requirement. This Court would not be breaking new ground; it would be the first in this Circuit to answer a question every other circuit to face it has already answered the same way.

This principle also forecloses any argument that a candidate who transfers his registration during the statutory filing window has thereby disqualified himself. Because the Constitution requires inhabitancy only "when elected," *Schaefer*, 215 F.3d at 1039, a State cannot condition candidacy on when, during that window, a candidate completes an otherwise-lawful registration transfer without adding precisely the kind of durational timing requirement *Thornton* forecloses. Whatever day Plaintiff's transfer took effect, the Constitution fixes no earlier deadline; only the Secretary's ratification theory does.

**D. The Secretary's own published guidance concedes there is no registration qualification for United States Senator.**

The Secretary need not be taken at Plaintiff's word. His official "Qualifications for Office" page recites, for United States Senator, only age, citizenship, and inhabitancy "when elected." Doc. 6, Ex. 5. It lists "a registered voter" as a qualification for Governor, Executive Councilor, State Senator, State Representative, and County Officer, the offices whose qualifications state

law may set, and for United States Senator it lists none. The State's chief election officer tells the public there is no voter-registration qualification for this office, then enforces one. That is not a debating point. It is the State's own admission that the requirement serves no qualification the law imposes, and operates only to exclude.

Because the condition is a qualification, the analysis is complete and the injunction should issue. The Court need go no further. The remaining Parts show that Plaintiff also prevails on every alternative the Secretary may raise.

## II. Even under Anderson-Burdick, Plaintiff prevails, and neither LPNH v. Gardner nor Barr v. Galvin holds otherwise.

If the Court treats the requirement as an election regulation subject to balancing, Plaintiff still wins. The framework weighs "the character and magnitude of the asserted injury" against "the precise interests put forward by the State." *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983); *Burdick v. Takushi*, 504 U.S. 428, 434 (1992).

### A. Total exclusion from the ballot is the most severe burden the framework recognizes.

Plaintiff is not delayed or inconvenienced. He is barred from the ballot entirely, based on when a municipal board he cannot compel chooses to meet. A rule that wholly excludes an otherwise-qualified candidate imposes the maximum burden the framework contemplates, and triggers the most demanding scrutiny.

### B. The State has no interest to weigh, because Plaintiff's identity and domicile were never in question.

Plaintiff was a continuously registered New Hampshire voter under the same Voter ID throughout. His Ward 3 domicile is undisputed. On June 11 the City accepted his transfer. The State's interests in confirming identity and domicile were already served in full. Requiring a ratification meeting on top of that serves no interest at all, because RSA 654:11 makes the addition of a qualified applicant mandatory, and RSA 654:7-a and 654:7-b make an election-day registrant a voter the instant officials find him qualified, with no meeting

required. A burden this severe, set against interests this empty, fails the balance.

**C. Campbell reached the same result on weaker facts; this case is easier.**

The Tenth Circuit struck Colorado's rule under balancing, finding that it "does little to 'winnow out' chosen candidates, but rather completely excludes those who have not registered." *Campbell*, 233 F.3d at 1235. Colorado's requirement carried a twelve-month registration lock, a far closer tie to a claimed regulatory interest than New Hampshire's bare timing rule. If that rule failed the balance, this one fails it more plainly.

**D. LPNH v. Gardner and Barr v. Galvin rejected unproven burdens; this burden is proven, total, and undisputed.**

The Secretary will point to two decisions from this Circuit upholding his ballot rules. Both prove Plaintiff's point rather than the Secretary's. In *Libertarian Party of New Hampshire v. Gardner*, the First Circuit affirmed summary judgment because the challenger produced no evidence of harm: "The Libertarian Party has failed to identify an unconstitutional burden on its First Amendment rights, having put forward no evidence of actual voter confusion, vote dilution, or other harm to its associational interests." 638 F.3d 6 (1st Cir. 2011). *Barr v. Galvin*, 626 F.3d 99 (1st Cir. 2010), likewise upheld a light-burden regulation on a deferential record. Neither case involved a candidate excluded from the ballot, and neither raised the Qualifications Clause. Here the burden is not unproven or speculative. It is total exclusion, and it is undisputed on the facts. Those decisions govern challengers who could not show a burden; they say nothing about a rule that categorically excludes a qualified one.

**III. RSA 655:17-a Does Not Impose the Ratification Condition That Creates the Constitutional Violation.**

Part III does not offer an independent state-law ground for relief; it confirms why Part I's constitutional violation exists. RSA 655:17-a conditions a Declaration of Intent on the candidate being "a registered voter." It says nothing about supervisor approval, and nothing about a completed registration being "pending" until a board meets. New Hampshire's

registration scheme confirms the opposite. RSA 654:7-a and 654:7-b make an election-day registrant a voter the instant officials find him qualified, and keep him registered at every later state and federal election with no ratification meeting. RSA 654:11 makes the addition of a qualified applicant mandatory. RSA 654:13 requires a written rejection within seven days if a registration is denied, and the Secretary issued none. On June 11 the City did not create a new registration; it transferred an existing one under the same Voter ID. Plaintiff was "a registered voter" within the meaning of RSA 655:17-a when he filed on June 12. The condition the Secretary enforced is his own, announced for the first time in the act of rejecting Plaintiff, and it cannot bear the weight of excluding a qualified candidate from federal office.

**IV. The remaining preliminary-injunction factors compel relief.**

**A. The harm is irreparable and is accruing now against the September 2 deadline.**

Plaintiff did not create this injury. He remained a continuously registered New Hampshire voter throughout, transferred his registration within the filing period, and did everything the law asked of him; the harm here is of the Secretary's making, not his. No later action can cure it: the Nashua supervisors of the checklist have no meeting scheduled before either the July 15 hearing or the September 2 filing deadline, and Plaintiff cannot compel one. Compl. ¶¶ 20-21. The Secretary himself now stipulates that the Board met on June 2, 2026, and, upon information and belief, did not meet again at any point in the filing window. Doc. 7 at 4-5. The loss of the right to appear on the ballot cannot be repaired by damages. Once the nomination-paper process closes and the ballot is finalized, the candidacy, the signatures Plaintiff's volunteers are gathering, and the associational rights of the electors who would support him are extinguished for the whole cycle, and no later judgment restores them. *Elrod v. Burns*, 427 U.S. 347, 373 (1976). The operative deadline is September 2, 2026, when certified nomination papers must reach the Secretary. RSA 655:43. Until the Declaration is accepted, the Secretary may not place Plaintiff on the ballot no matter how many signatures he gathers. RSA 655:43, II. The injury is concrete and imminent on that calendar. Relief is not futile:

Plaintiff has already collected approximately 2,500 signatures toward the 3,000-signature nomination-paper threshold, with collection ongoing before the August 5 deadline. Supplemental Declaration of Aaron Ross Day, filed herewith, ¶¶ 2-3.

**B. The equities favor relief: the order costs the State nothing, and denial costs Plaintiff a federal right.**

This point is developed fully in the incorporated Memorandum, Doc. 6 § III. In short: the order directs acceptance of a one-page form and changes nothing else; Plaintiff still must gather 3,000 valid signatures to earn a place on the ballot. Denial extinguishes a federal constitutional right, and enforcing constitutional rights is always in the public interest. The Ballot Law Commission's own written decision, which the Secretary stipulates, found Plaintiff "extremely knowledgeable about New Hampshire election laws." Doc. 7 at 5. That finding cuts against the Secretary, not against Plaintiff: if a candidate the Commission itself credits with that degree of knowledge did not anticipate a supervisor-ratification requirement found nowhere in RSA 655:17-a's text, the requirement was not knowable because it does not exist in the statute. It was invented in the act of rejecting him.

**C. Purcell favors deciding this now, not later.**

*Purcell v. Gonzalez*, 549 U.S. 1 (2006), cautions against changing election rules on the eve of an election. This case is the opposite. The hearing is July 15; the nomination-paper deadline is September 2; the general election is November 3. Resolving a ballot-access dispute now, months before ballots are finalized, is precisely what *Purcell* favors. Deciding the question is orderly. Leaving it open is what risks late disruption.

**D. The relief restores the status quo, and, even if mandatory, the remedy is acceptance, not remand.**

Plaintiff asks the Court to restore the status quo the Secretary disturbed by grafting a non-statutory condition onto RSA 655:17-a. To the extent any part of the relief is treated as mandatory, the entitlement is clear rather than merely probable. The relief sought is narrowly

tailored and ministerial: acceptance of a one-page form. The remedy is acceptance of the June 12 Declaration as timely filed, not a remand, because RSA 654:11's "shall" leaves nothing for the agency to decide. No bond should be required. Fed. R. Civ. P. 65(c).

**E. The state forum is exhausted, and no abstention doctrine applies.**

The Ballot Law Commission, the forum the Legislature designated for ballot-access disputes, rendered a final adverse decision on June 29, 2026, denying Plaintiff's appeal 4 to 1; no state process remains that could accept Plaintiff's Declaration before the filing window's closure becomes irrevocable, and the Commission in any event has no power to decide the federal constitutional question. State mandamus is not an adequate remedy either: the designated forum already ruled against Plaintiff 4 to 1, the filing window closed on June 12, and no writ compelling a supervisors' meeting today could revive a candidacy the window has already foreclosed. Nor is a hypothetical November write-in candidacy an adequate remedy: the Supreme Court has already rejected write-in availability as a cure for unconstitutional ballot exclusion, *Lubin v. Panish*, 415 U.S. 709, 719 (1974); *Anderson v. Celebrezze*, 460 U.S. 780, 799 & n.26 (1983), and in any event Plaintiff's injury here is exclusion from candidacy and the nomination-paper process itself, RSA 655:43, II, not merely from the printed ballot line. *Testerman v. N.H. Secretary of State*, No. 24-cv-20-LM-AJ (D.N.H. Sept. 6, 2024) (report and recommendation, approved), does not counsel otherwise: it turned on plaintiffs who asserted other voters' interests and on a voter-challenge remedy under RSA 659:29, while Plaintiff asserts his own candidacy and has no remaining state remedy. RSA 665:7's finality provision cannot contract federal jurisdiction over a Section 1983 claim. *Howlett v. Rose*, 496 U.S. 356, 367-71 (1990).

**Conclusion**

The qualifications the United States Constitution sets for United States Senator do not include a ward-registration ratification meeting, and New Hampshire's Secretary of State may not add one by rejecting a form. Whether the Court reaches that conclusion through *Thornton*'s

categorical rule or through *Anderson-Burdick* balancing, the plain text of RSA 655:17-a confirms it: Plaintiff is qualified, he was registered, and the only thing standing between him and the ballot is a decision the Secretary had no authority to make. Denying relief would require holding that a condition the Secretary's own stipulations show Plaintiff could not have met between his June 11 transfer and the June 12 close of the statutory filing window is nonetheless a valid condition of eligibility for the United States Senate. Nothing in this record supports that holding. The Court should order the Secretary to accept Plaintiff's June 12, 2026 Declaration of Intent for United States Senator as timely filed, and to process his nomination papers on equal terms with every other candidate. That order costs the State nothing and asks for nothing the Constitution does not already promise: that the choice of who serves New Hampshire in the United States Senate belongs to its voters, not to a board's calendar.

Respectfully submitted,

/s/ Aaron Ross Day
Aaron Ross Day, pro se
34 Franklin St, Ste 325
Nashua, NH 03064
617-669-2187
ard@day2026.com
Dated: July 13, 2026