**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| Aaron Ross Day | \* | |
| | \* | |
|       Plaintiff, | \* | |
|     v. | \* | Civil No. 1:26-CV-00499-LM-AJ |
| | \* | |
| David M. Scanlan (Official Capacity), | \* | |
| | \* | |
|       Defendants. | \* | |
| | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## <u>DEFENDANT'S OBJECTION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION</u>

The Defendant, New Hampshire Secretary of State David M. Scanlan, by and through his counsel, the New Hampshire Office of the Attorney General, hereby objects to Plaintiff Aaron Ross Day's June 30, 2026, Motion for Preliminary Injunction, stating as follows:

### FACTS

1.      Plaintiff filed the originating complaint with this Court on June 16, 2026, claiming that he has been unconstitutionally kept off of the New Hampshire ballot as a United States Senate candidate for the November 2026 election. *See* ECF Doc. No. 1, ¶1. On June 30, 2026, Plaintiff filed a motion for a preliminary injunction asking this court to order the Secretary of State to accept a Declaration of Intent for United States Senator and to process his candidacy and nomination papers as they would be for other candidates. *See* ECF Doc. No. 6-1, pg. 11.

2.      Plaintiff is a candidate for United States Senate for the State of New Hampshire in the upcoming November 3, 2026, election. *See* ECF Doc. No. 1, ¶1. On June 10, 2026, he submitted a Declaration of Intent for United States Senate to the Secretary of State's office, seeking to get his name on the ballot for the November 2026 election. *See* ECF Doc. No. 1, ¶14.

On June 11, 2026, Deputy Secretary of State Brendan A. O'Donnell notified Plaintiff by email that his declaration was rejected as Plaintiff was not registered to vote in Nashua Ward 3, where Plaintiff is domiciled. *See* ECF Doc. No. 1, ¶15.

3.      On June 11, 2026, after receiving the e-mail from Brendan O'Donnell, Plaintiff submitted a voter registration application to the City of Nashua.  *See* ECF Doc. No. 1, ¶17. On June 12, 2026, Plaintiff submitted a second Declaration of Intent form to the Secretary of State's office. Later that day, June 12, 2026, Deputy Secretary of State Brendan A. O'Donnell emailed Plaintiff and again informed him that his declaration was rejected because he is not a registered voter in Nashua Ward 3, where Plaintiff is domiciled. *See* ECF Doc. No. 1, ¶19. Mr. O'Donnell explained in his email that while Plaintiff submitted a voter registration application to the City of Nashua on June 11, 2026, he would not be a registered voter until his application is reviewed and approved by the city. *See id*.

4.      On Jun 12, 2026, Plaintiff appealed the rejection of his notification to the New Hampshire Ballot Law Commission, pursuant to RSA 665:7. *See* ECF Doc. No. 1, ¶19. After holding a hearing on the matter on June 29, 2026, at which Plaintiff appeared and presented argument, the New Hampshire Ballot Law Commission issued an order affirming the decision to reject Plaintiff's declarations. *See* ECF Doc. No. 6-1, pg. 8.

## STANDARD OF REVIEW

5.      It is well-recognized that "[a] preliminary injunction is an extraordinary and drastic remedy that is never awarded as of right." *US Ghost Adventures, LLC v. Miss Lizzie's Coffee LLC*, 121 F.4th 339, 347 (1st Cir. 2024) (quoting *Peoples Fed. Sav. Bank. V. People's United Bank*, 627 F.3d 1, 8-9 (1st Cir. 2012). Before the Court can impose such a remedy, the Court must consider: (1) the Plaintiff's "likelihood of success on the merits"; (2) whether the

Plaintiff would "suffer irreparable harm in the absence of" preliminary relief; (3) and the balance of hardships between the parties. *Ryan v. United States Immigration & Customs Enf't*, 974 F.3d 9, 11-12 (1st Cir. 2020). Additionally, preliminary relief still may not be warranted if it would adversely affect the public interest. *See Together Emps. v. Mass Gen. Brigham Inc.*, 32 F.4th 82, 85 (1st Cir. 2022). The Plaintiff's likelihood of success on the merits and the potential for irreparable harm are the two most important factors for the Court to consider. *See Gonzalez-Droz v. Gonzalez-Colon*, 573 F.3d 75, 79 (1st Cir. 2009).

6.      When a party demands mandatory provisional relief that alters rather than preserves the status quo, the circumstances must be especially exigent to warrant this even more extraordinary form of provisional relief. *See Braintree Laboratories, Inc. v. Citigroup Global Markets Inc.*, 622 F.3d 36, 41 (1st Cir. 2010) ("Because a mandatory preliminary injunction alters rather than preserves the status quo, it normally should be granted only in those circumstances when the exigencies of the situation demand such relief" (quotation omitted)).

**ARGUMENT**

I.   Likelihood of Success

7.      When considering whether to issue a preliminary injunction, "[t]he movant's likelihood of success on the merits weighs most heavily in the preliminary injunction calculus." *Ryan v. United States Immigrations & Customs Enf't*, 974 F.3d 9, 18 (1st Cir. 2020). It is so essential a consideration that "if the movant cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." *Id*. (quoting *New Comm Wireless Servs., Inc. v. SprintCom, Inc.*, 287 F.3d 1, 9 (1st Cir. 2002).

8.       Plaintiff is not entitled to a preliminary injunction as he cannot show a likelihood of success on the merits. Plaintiff cannot succeed on his state law claims because they are not

actionable under §1983 and because state law exempts the decisions of the Ballot Law Commission from further judicial review. Plaintiff cannot prevail on his constitutional claims as the State requirements for being added to the ballot do not impose additional qualifications for federal office and because Plaintiff has not described any actions taken by Defendant that violate his constitutional rights.

### a. State law claims

9.    In his Motion for a Preliminary Injunction, Plaintiff first argues that this Court could award a preliminary injunction without examining the constitutional question raised by Plaintiff, as Plaintiff claims that the rejections of his declarations were unsupported by New Hampshire state law. This argument fails for a variety of reasons.

10.    First, Plaintiff proceeds in this case under 42 U.S.C. § 1983, which requires Plaintiff to show that he was deprived "of rights secured by the Constitution or by federal law." *Gagliardi v. Sullivan*, 513 F.3d 301, 306 (1st Cir. 2008). Any argument by Plaintiff that Defendant failed to follow or comply with a New Hampshire *state* law is not actionable under § 1983 because "a violation of state law is not by itself a constitutional violation." *Jeneski v. City of Worcester*, 476 F.3d 14, 17 (1st Cir. 2007). Accordingly, Plaintiff has no chance of success on the merits of his state law claim.

11.    Relatedly, Plaintiff's state-law claims are barred by the Eleventh Amendment. "A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). "Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment." *Id.* The Eleventh Amendment therefore "bars the adjudication of pendent state law claims against nonconsenting state

defendants in federal court." *Raygor v. Regents of the Univ. of Minn.*, 534 U.S. 533, 540–41 (2002). This is true even if those claims would otherwise fall within a federal court's supplemental jurisdiction under 28 U.S.C. § 1367. *Id.* at 548. For this reason, too, Plaintiff has no chance of success on the merits of his state law claim.

12.     Plaintiff availed himself of the state law remedy afforded to him to challenge the rejection of his declarations, which was an appeal to the Ballot Law Committee. The Committee upheld the rejections, which, by statute, represents the final determination on the matter. *See* RSA 665:7 ("The ballot law commission shall hear and determine disputes arising over whether nomination papers or declarations of candidacy filed with the secretary of state conform with the law. The decision of the ballot law commission in such cases shall be final as to questions both of law and fact, and no court shall have jurisdiction to review such decision."). Plaintiff cannot now succeed under a state law theory when that state law forecloses further judicial review of the state law arguments raised by Plaintiff.

13.     Even if there were a provision of law that enabled this Court to examine the state law arguments raised by Plaintiff, however, he would still have no likelihood of success on the merits because state law supported the rejections of Plaintiff's declarations. As noted, the June 11th and June 12th rejections were each issued because Plaintiff was not registered to vote in Nashua Ward 3, where he was domiciled. Under state law, a declaration of intent requires a candidate to be registered to vote in the ward of their domicile. *See* RSA 655:17-a (Declaration of Intent forms must include "I, _____, declare that I am domiciled in Ward _____, in the city (or town or unincorporated place) of_____, county of _____, state of New Hampshire, <u>and am a registered voter herein</u>.") (emphasis added). In rejecting Plaintiff's declarations, Mr. O'Donnell was not departing from state law but was rather enforcing the clear

statutory language requiring candidates to be registered to vote where they are domiciled. Because the rejections of Plaintiff's declarations complied with and enforced state law, any claim based on the contrary has no success of likelihood on the merits.

### b. Constitutional claims

14.     Plaintiff is similarly unlikely to succeed on his constitutional claim. Plaintiff argues that it is unconstitutional for the state to require United States senate candidates to be registered to vote where they are domiciled, as it adds an additional qualification to hold office that the United States Constitution does not impose. This argument is unlikely to succeed on the merits because it confuses a requirement to be placed on a state ballot with a qualification needed to hold federal office.

15.     It is clearly established that "the power to add qualifications" needed to be a United States senator "is not reserved to the States" but is instead rests solely in the text of the United States Constitution. *United States Term Limits v. Thornton*, 514 U.S. 779, 800-01 (1995). New Hampshire codified this Constitutional command in its statutes, listing the only qualifications for United States Senate as those "provided in Article 1, section 3 of the federal constitution." RSA 665:3. New Hampshire does not add any additional qualifications for an individual to be a United States senator.

16.     The process that Plaintiff complains of, specifically the domicile and registration requirement of RSA 655:17-a, is a process that governs the requirements needed for a candidate to have their name placed on the New Hampshire ballot. Just as the United States Supreme Court made clear that states may not impose additional qualifications for federal office, so, too, did it make clear that states *may* impose additional requirements for a candidate to have their name appear on the ballot. *See Anderson v. Celebrezze*, 460 U.S. 780, 788 n.9 (1983) (states have the

"undoubted right" "to require candidates to make a preliminary showing of substantial support for a place on the ballot"); *see also Libertarian Party of N.H. v. Gardner,* 843 F.3d 20, 33 (1st Cir. 2016) (upholding signature gathering requirement for ballot access).

17.     In distinguishing state restrictions around ballot access versus additional state-imposed qualifications for federal office, the Supreme Court has recognized that there is both a right and expectation of the States to impose election regulations to promote "fair and honest" elections and to ensure there is "some sort of order, rather than chaos, to accompany the democratic process." *Anderson v. Celebrezze*, 460 U.S. at 788. Accordingly, courts will uphold "generally applicable and evenhanded restrictions" when they "protect the integrity and reliability of the electoral process itself. *Id*. at 788 n.9.

18.     The registration requirement at issue is valid and consistent with the principles of *Anderson* as it is a restriction that promotes order and protects the integrity of New Hampshire elections by preventing candidates from playing games with the State's elections. The period for candidates to declare their nominations to run in a primary or to be a third-party candidate in the general election runs from June 3 to June 12. RSA 655:14. The Nashua Board of Registrars, as with other supervisors of voter registration lists, met the evening of June 2, which ensured any interested candidates were able to register up to the night before the filing period begins.

19.     This requirement ensures that candidates are prevented from waiting-and-seeing what other candidates declare to run in which seat and then deciding whether and where to run based on the choices other candidates who already registered and declared their intentions. For example, without the registration requirement, a candidate with homes in multiple locations could wait to see who declares to run in primaries or in the general election and then choose where to run based on those declarations, choosing to run in the race with the fewest other

candidates (thereby increasing their chance at election). Such political gamesmanship cuts against a fair and honest elections and invites a chaotic declaration period where all candidates wait until the last moments of the filing period to file their notifications, rather than avail themselves of the eleven-day period contemplated by statute. Similarly, the restriction helps prevent a candidate who would run for no reason other than to damage another candidate who declares their intention to run during the filing period, a goal that has been recognized and approved by the Supreme Court. *See Storer v. Brown*, 415 U.S. 724, 733-35 (1974) (ruling in favor of a state restriction that is "a substantial barrier to a party fielding an 'independent' candidate to capture and bleed off votes in the general election that might well go to another party" as "a State has an interest, if not a duty, to protect the integrity of its political processes from frivolous or fraudulent candidates.").

20.    Also fatal to the likelihood of success of Plaintiff's Constitutional claim is that he has not described any action taken by Secretary Scanlan that deprived Plaintiff of any right secured to him by federal law or the Constitution. To succeed in a § 1983 case, "a plaintiff must plead that each Government-official defendant, through the official's own actions, has violated the Constitution." *Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009) (emphasis added).  This conduct must be direct by each defendant; imputed or supervisory liability is not permitted in § 1983 actions.  *Id.; see also, e.g., Aponte Matos v. Toledo-Davila,* 135 F.3d 182, 192 (1st Cir. 1998) ("Supervisory liability under § 1983 cannot be predicated on a respondeat theory, but only on the basis of the supervisor's own acts or omissions."). While Plaintiff has taken issue with the responses received from a different State employee and with the inaction of the Nashua Board of Registrars, he has not pled any facts that could show Secretary Scanlan, through his own actions,

deprived Plaintiff of any constitutional right. Accordingly, Plaintiff's claim against Defendant cannot succeed on the merits.

II.     Balance of Equities and Public Interest

21.     Even assuming Plaintiff has demonstrated that he would suffer irreparable harm absent an injunction, he has still failed to meet his burden under the third and fourth preliminary injunction factors. When considering whether the factors of a preliminary injunction have been met, the "balancing of the equities and the analysis of the public interest [are considered] together, as they merge when the government is the opposing party." *Doe v. Mills*, 16 F.4th 20, 37 (1st Cir. 2021) (internal quotation omitted). Here, Plaintiff seeks to prevent the State from enforcing the provisions of state law requiring candidates to register to vote in the place of their domicile and declare such registration. "[A]ny time a [government] is enjoined by a court from effectuating statutes enacted by the representatives of its people, it suffers a form of irreparable injury." *Dist. 4 Lodge of the Int'l Ass'n of Machinists 7 Aero Workers Local Lodge 207 v. Raimondo*, 18 F.4th 38, 47 (1st Cir. 2021) (quoting *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers). Because Plaintiff has such low likelihood of success on the merits of his claim, the balance of equities tips in the favor of Defendant and of continued enforcement of the State's statutes.

CONCLUSION

22.     Because Plaintiff cannot succeed on the merits of either his state law or constitutional claims and because the balance of equities and public interest favor Defendant, Plaintiff's request for preliminary injunctive relief must be denied.

WHEREFORE, the Defendants respectfully requests that this Honorable Court:

A.  Deny Plaintiff's June 30, 2026 Request for a Preliminary Injunction;

B.  Grant such further relief as the court deems just and equitable.

Respectfully submitted,

New Hampshire Secretary of State David M. Scanlan

By and through his attorney,

THE OFFICE OF THE ATTORNEY GENERAL

Dated: July 13, 2026

/s/ Peter M. MacKenna
Peter M. MacKenna, Bar #269543
Assistant Attorney General
N.H. Department of Justice (Civil Bureau)
1 Granite Place - South
Concord, NH 03301
603-271-3650
peter.m.mackenna@doj.nh.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this day a copy of the foregoing was served to parties of record via the Court's electronic filing system.

/s/ Peter M. MacKenna
Peter M. MacKenna

- 10 -