**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


Aaron R. Day

    v.                                    Case No. 26-cv-499-LM-AJ

David M. Scanlan, New
Hampshire Secretary of State


### REPORT AND RECOMMENDATION

Before the court for report and recommendation is Plaintiff Aaron Day's motion for preliminary injunction, seeking an order directing Defendant David Scanlan, the New Hampshire Secretary of State ("Secretary"), to accept Mr. Day's Declaration of Intent submitted on June 12, 2026 so that Mr. Day's name can appear on the November ballot as an independent candidate for the United States Senate. See Doc. No. 6 (Mot. for Prelim. Inj.); 9 (Supp. Memo.). The Secretary opposes Mr. Day's motion for preliminary relief, arguing that Plaintiff's failure to register as a voter where he is domiciled, see N.H. Rev. Stat. Ann. ("RSA") 655:17-a, provides a valid basis for rejecting his Declaration of Intent and refusing to place his name on the ballot. See Doc. No. 10 (Obj.). For the following reasons, the district judge should grant Mr. Day's motion for a preliminary injunction, order the Secretary to accept Mr. Day's Declaration of Intent, and direct the Secretary to include Mr. Day on the ballot if he is otherwise eligible.

Background

I.   <u>Statutory Context</u>

A candidate, like Mr. Day, who seeks a place on the New Hampshire general election ballot by nomination papers——rather than through a party primary——must file a Declaration of Intent during the statutory filing period.  RSA 655:14-a.  In 2026, that filing period ran from June 3, 2026, to June 12, 2026.  <u>See</u> RSA 655:14.

RSA 655:14-a also directs candidates to file a Declaration of Intent as provided in RSA 655:17-a.  RSA 655:17-a, in turn, requires nonparty candidates to complete and sign the following form:

> I, _____ , declare that I am domiciled in Ward _____ , in the city (or town or unincorporated place) of _____ , county of _____ , state of New Hampshire, and am a registered voter herein . . . .[1]

II.  <u>Stipulated Facts</u>

The pertinent facts, undisputed for purposes of Mr. Day's

---

[1] The Secretary contends, and Mr. Day does not dispute, that RSA 655:17-a requires a candidate filing a Declaration of Intent to be registered to vote where the candidate is domiciled.  The court adopts that understanding of the statute for the purposes of this report and recommendation but acknowledges that a reasonable reading of RSA 655:17-a, upon consideration of the chapter as a whole, could produce an alternative interpretation not requiring a candidate for United States Senate to be registered to vote at the candidate's domicile.

motion for preliminary injunction, are the following[2]:

On June 10, 2026, Mr. Day filed a Declaration of Intent at the Secretary of State's office, seeking to run for the United States Senate as an independent candidate.  On June 11, Deputy Secretary of State Brendan O'Donnell rejected Mr. Day's Declaration of Intent explaining that it did "not conform to state law because [Mr. Day] [was] not registered to vote in Nashua Ward 3," where he lives.  The Deputy Secretary cited RSA 655:17-a.  The Deputy Secretary continued, "June 2, 2026, was the last day for you to register as a voter at your current domicile prior to the opening of the candidate filing period on June 3."

On June 11, 2026, after receiving the rejection of his Declaration of Intent, Mr. Day submitted a completed voter registration application to the City of Nashua, his current domicile.  The next day, June 12, Mr. Day filed a new Declaration of Intent with the Secretary of State's Office, affixing his City of Nashua voter registration documentation and a letter explaining his attempt to cure the deficiency outlined by the Deputy Secretary.  The same day, the Deputy Secretary

---

[2] At the June 7, 2026 case management conference, the Secretary agreed to stipulate to some of the facts alleged in Mr. Day's complaint because of the legal, rather than factual, questions presented in Mr. Day's motion for preliminary relief. See Doc. No. 7 (Stipulations).

again rejected Mr. Day's Declaration of Intent reasoning that Mr. Day's voter registration remained pending.  He stated that a person does not become a registered voter until the supervisors of the checklist meet and approve the voter's registration.

The Nashua Board of Registrars, the City of Nashua's supervisors of the checklist, met on June 2, 2026 and acted on all then-pending voter registration applications.  The Nashua Board of Registrars did not subsequently meet between June 3 and June 12.

Mr. Day appealed the Deputy Secretary's decision to the Ballot Law Commission which held a hearing on June 29, 2026. Following that hearing, the Commission voted to uphold the Deputy Secretary's decision.  Mr. Day filed his Complaint on June 16, 2026.  The Secretary, in his official capacity, does not dispute that Mr. Day may present his as-applied challenge to the voter-registration-at-place-of-domicile requirement in this action.[3]  The court held a hearing on his motion for preliminary relief on July 15, 2026.

### Preliminary Injunction Standard

"A preliminary injunction is an 'extraordinary' equitable remedy that is 'never awarded as of right.'" Starbucks Corp. v.

---

[3] At oral argument, counsel for the Secretary acknowledged that the Secretary's lack of authority or control over the Nashua Board of Registrars is not at issue in this court's disposition of the motion for a preliminary injunction.

4

McKinney, 602 U.S. 339, 345 (2024) (quoting Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008)).  A plaintiff must satisfy the following four factors to be entitled to a preliminary injunction: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm absent interim relief; (3) a balance of equities in the plaintiff's favor; and (4) service of the public interest.  Arborjet, Inc. v. Rainbow Treecare Sci. Advancements, Inc., 794 F.3d 168, 171 (1st Cir. 2015).  Irreparable harm and likelihood of success on the merits are the factors that weigh most heavily in the analysis.  See Winter, 555 U.S. at 22.

## Discussion

The qualifications for United States Senate are set out in the Qualifications Clause, Article I, Section 3, Clause 3 of the United States Constitution:

> No Person shall be a Senator who shall not have attained to the Age of thirty Years, and been nine Years a Citizen of the United States, and who shall not, when elected, be an Inhabitant of that State for which he shall be chosen.

U.S. Const., art. I, § 3, cl. 3.  The New Hampshire statute on the qualifications required to hold the Office of U.S. Senator in New Hampshire incorporates that provision by reference:

> To hold the office of United States senator, a person must be qualified as provided in Article 1, section 3 of the federal constitution.

RSA 655:3.

The core dispute before this court is whether the Secretary's interpretation of RSA 655:17-a, requiring Mr. Day to be a duly-registered voter in Nashua before the Secretary will accept his Declaration of Intent, imposes an additional qualification on his eligibility for the Office of U.S. Senator that Article I, Section 3, clause 3 does not allow, or whether that requirement is merely a ballot access restriction like a filing fee or signature requirement that the State may impose.

I.   Likelihood of Success on the Merits

A.   Qualification Clause Claim

Mr. Day argues that the requirements imposed by the Secretary violate the Qualifications Clause, U.S. Const., Art. I, Sect. 2, Cl. 3, rendering them invalid as applied to him.  He also asserts claims under the First and Fourteenth Amendments and the Supremacy Clause.  To succeed on his as-applied constitutional challenge, Mr. Day must show that the Secretary's application of RSA 655:17-a to preclude his candidacy violates the Qualifications Clause or, alternatively, that the burden on Mr. Day's rights outweighs the State's interest in electoral integrity.  See Hightower v. City of Boston, 693 F.3d 61, 71-72 (1st Cir. 2012).

The qualifications for the Office of the United States Senator set forth in Article I, Section 2, clause 3, prescribing the minimum age, duration of citizenship, and the State where

the candidate must inhabit upon election, are "fix[ed]" and "exclusive"; it is well-settled that the States cannot add new qualifications.  U.S. Term Limits v. Thornton, 514 U.S. 779, 806 (1995).  Those criteria completely occupy the field of qualifications for Senators from New Hampshire and all of the States.

> The Framers decided that the qualifications for service in the Congress of the United States be fixed in the Constitution and be uniform throughout the Nation.  That decision reflects the Framers' understanding that Members of Congress are chosen by separate constituencies, but that they become, when elected, servants of the people of the United States.  They are not merely delegates appointed by separate, sovereign States; they occupy offices that are integral and essential components of a single National Government. . . . [A]llowing individual States to craft their own qualifications for Congress would thus erode the structure envisioned by the Framers, a structure that was designed, in the words of the Preamble to our Constitution, to form a "more perfect Union."

Id. at 837-38.

The restrictions on ballot access that have been deemed to amount to unlawful extra qualifications adding to those listed in the Qualifications Clause include those relating to pre-election domicile and the candidate's pre-election registration as a voter in the State at issue.  See, e.g., Tex. Dem. Party v. Benkiser, 459 F.3d 582, 589-90 (5th Cir. 2006) (Framers intended to require in-state domicile only "when elected," rendering pre-election domicile requirement unlawful under Qualifications Clause); Schaefer v. Townsend, 215 F.3d 1031, 1036 (9th Cir.

7

2000) (rejecting California's in-state residency requirement, noting that Framers discussed and explicitly rejected any requirement of in-state residency before the election); see also Campbell v. Davidson, 233 F.3d 1229, 1233-34 (10th Cir. 2000) (holding that Colorado's restriction requiring that candidates appearing on ballot be registered voters violated Qualifications Clause).  The restriction applied to Mr. Day here not only requires him to be registered to vote in the State to appear on the ballot, but also requires him to be domiciled in New Hampshire prior to the election.  Those are the types of requirements deemed unconstitutional in each of those Qualifications Clause cases.

The Secretary does not dispute that the State cannot add new qualifications for United States Senators to the list in the Qualifications Clause.  According to the Secretary, however, the restriction at issue cannot be a qualification because Mr. Day may still be elected to office through a write-in campaign, even if his name will not appear on the general election ballot. Because the possibility of a successful write-in campaign exists, the Secretary contends, the ballot access restriction at issue is not a State-imposed qualification for serving as a United States Senator.

Courts have rejected arguments like the Secretary's in finding restrictions on ballot access to be functionally

equivalent to unlawful qualifications for federal office.   In
Thornton, the Court considered whether Arkansas's term-limit
restriction on ballot access was in fact a qualification in
"ballot-access" clothing.   Observing, among other things, that
it is "significantly more difficult for the barred candidate to
win the election," even if a write-in campaign is not precluded,
the Court rejected the argument that the possibility of a write-
in campaign distinguished the term-limit restriction in that
case from an extra-constitutional qualification for federal
office.   Thornton, 514 U.S. at 831; see also Lubin v. Panish,
415 U.S. 709, 719 n.5 (1974) ("The realities of the electoral
process . . . strongly suggest that 'access' via write-in votes
falls far short of access in terms of having the name of the
candidate on the ballot."); id. (referring to the alternative of
a write-in campaign as "dubious at best"); Campbell, 233 F.3d at
1233 (requiring candidate to be registered voter to access
ballot violates Qualifications Clause for federal office).

A state cannot classify a restriction as a ballot access
measure to avoid scrutiny under the Qualifications Clause.
Thornton and its progeny have rejected that notion.   In
Thornton, the issue presented was whether the state's term-limit
ballot restriction was constitutional.   514 U.S. at 783.   The
Court considered whether the restriction "impose[d] any
substantive qualification rendering a class of potential

9

candidates ineligible for ballot position." Id. at 835.  In its discussion, the Court noted that "constitutional rights would be of little value if they could be indirectly denied." Id. at 829 (citing Harman v. Forssensius, 380 U.S. 528, 540 (1965)) (cleaned up).  It continued, "[t]he Constitution nullifies sophisticated as well as simple-minded modes of infringing on constitutional protections." Id. (citing Lane v. Wilson, 307 U.S. 268, 275 (1939)).

The Secretary's interpretation of RSA 655:17-a disadvantages a particular class of people including Mr. Day: people who are not registered to vote where they live in New Hampshire before the election.  Those who are not registered to vote and those not presently domiciled in New Hampshire are barred from the ballot.  Under the Secretary's interpretation of RSA 655:17-a, as applied to Mr. Day, a candidate for United States Senate must satisfy each of the Qualifications Clause requirements and also be a registered voter domiciled in a New Hampshire City or Town months before the general election.  Mr. Day has demonstrated a likelihood of success on the merits on whether the imposition of that additional voter-registration-where-domiciled qualification violates the Qualifications Clause.  See Campbell, 233 F.3d at 1233 (requiring a candidate to be a registered voter to appear on the ballot violates

10

Qualifications Clause).[4]

The Secretary seeks to distinguish the requirement at issue here from the State-imposed supplemental qualifications deemed unconstitutional in Thornton and other cases by pointing to a different line of cases where courts have upheld procedural ballot access measures such as signature requirements, filing fees, and party disaffiliation requirements.  See, e.g., Storer, 415 U.S. 724 (upholding California's "sore loser" ballot restriction which required independent candidates to be disaffiliated from a political party for one year); Jenness v. Fortson, 403 U.S. 431 (1971) (upholding requirement that independent candidates demonstrate substantial support in the community by securing signatures from a percentage of registered voters); Biener v. Calio, 361 F.3d 206, 212 (3d Cir. 2004) (upholding filing fee requirement, noting that it "is not inherent in the candidate" and "may be paid by anyone in his behalf").  To be sure, the State may require the completion of certain forms to establish a candidate's declaration of candidacy.  See Schaefer, 215 F.3d at 1037 ("Filing the registration form is justified by the state's right to maintain

_____

[4] The Secretary's attempt to distinguish Campbell——arguing that he articulates a state interest that the State of Colorado did not——is unpersuasive given that Colorado unsuccessfully contended that its voter registration requirement was designed to "protect the integrity and reliability of the electoral process."  233 F.3d at 1233.

11

order in its elections proceedings.").  That form, however, cannot be used to impose a barrier to ballot access amounting to a supplemental qualification.  The voter registration requirement at issue here is distinguishable from the procedural requirements deemed valid under the Elections Clause.  The candidate's status as a registered voter domiciled in a particular town or city relates personally to the candidate and targets a status unrelated to party affiliation or popular support that are closely tied to a person's candidacy for office.  Consequently, a review of upheld procedural ballot access measures bolsters the court's conclusion that the voter registration requirement is a qualification.

The Secretary was unable to provide authority for the specific proposition that a voter-registration-where-domiciled requirement is constitutional.  The Thornton Court noted the "striking unanimity" among courts to have considered the issue of whether a state can add qualifications for a Member of Congress.  514 U.S. at 799 (collecting cases).  Likewise, the court's assessment of persuasive authority reveals unanimity: requiring a person to be a registered voter before obtaining ballot access imposes an unconstitutional additional qualification for federal office.  See, e.g., Campbell, 233 F.3d at 1235; Sharma v. Hirsch, 121 F.4th 1033, 1043 (4th Cir. 2024) ("The Board conceded at oral argument that North Carolina . . .

12

cannot mandate that candidates for federal office be registered voters because such a requirement would constitute an unconstitutional additional qualification on officeholding."); Biener, 361 F.3d at 206 (referring to voter registration requirements as an "impermissible qualification[]"); Krislov v. Rednour, 226 F.3d 851, 855-56, 857, 860-62 n.1 (7th Cir. 2000) (addressing a residency requirement for circulators seeking signatures for a candidate but acknowledging that "[t]he Constitution also does not require candidates to be registered to vote, either generally or in a specific district"); Woodruff v. Herrera, No. 09-449 JH/KBM, 2009 WL 10668512, *2 (D.N.M. Dec. 11, 2009) ("[T]o the extent that the Declaration of Candidacy form requires that a candidate must be registered to vote as a qualification to get on the ballot, the court [finds] that it is unconstitutional."). Without pertinent authority to the contrary, the Secretary has not persuaded the court to depart from these cases.

The demonstrated likelihood that the requirement, as applied to Mr. Day, is unlawful under the Qualifications Clause, resolves the question of whether Mr. Day has established a likelihood of success on the merits. Consequently, this court need not subject the requirement at issue here to a balancing test to determine whether the restriction is unconstitutional. See Schaefer, 215 F.3d at 1037-38 (explaining that in Thornton,

13

the Court "held the balancing test [under which a court would consider the State's interest] inapplicable where the challenged provision supplemented the Qualifications Clause").

B.    First and Fourteenth Amendment Claims

Apparently relying on the States' authority under the Elections Clause to prescribe the time, place, and manner of holding elections, the Secretary asserts that this court must evaluate the constitutionality of the restriction at issue by employing the balancing framework set forth in Anderson v. Celebrezze, 460 U.S. 780 (1983) (finding that burden on candidates' and voters' First and Fourteenth Amendment freedoms of choice in elections and political association outweighed Ohio's interests in its early filing deadline for independent Presidential candidates to have ballot access).

Even if this court were to accede to the Secretary's argument that the restriction here is a ballot access restriction, which must be evaluated under the balancing test in Anderson, the outcome would be the same.  As explained below, Plaintiff's First and Fourteenth Amendment freedoms outweigh the State's asserted interests in election integrity.

When considering the constitutionality of a State's election procedures, courts balance "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate"

14

against "the precise interest put forward by the State as justifications for the burden imposed by its rule," taking into consideration "the extent to which those interests make it necessary to burden the plaintiff's rights." Id. at 789.

The Secretary's purported rationale for the voter-registration-where-domiciled requirement is that it "ensures that candidates are prevented from waiting-and-seeing what other candidates declare to run in which seat and then deciding whether and where to run based on the choices of other candidates who already registered and declared their intentions." Doc. No. 10 ¶ 19. The Secretary uses the example of a potential candidate with multiple New Hampshire homes waiting to see who declares to run and then choosing where to run based on those declarations. Id. He also contends that the restriction prevents a candidate from running "for no reason other than to damage another candidate."[5] Id.

---

[5] At argument, the Secretary referenced State of Alaska, Div. of Elections v. Sullivan, S-19935, Doc. No. 34 (Alaska 2026) (June 29, 2026 Summary Order affirming lower court decision). Therein, the Alaska Supreme Court affirmed a lower court's decision requiring the Division of Elections to include plaintiff Daniel J. Sullivan on the primary election ballot for United States Senate. Mr. Sullivan met the constitutional qualifications for office and the state's procedural requirements, but the Division of Elections excluded him from the ballot after determining that his declaration was not filed in good faith. Mr. Sullivan was running for a Senate seat currently held by Senator Daniel S. Sullivan. The lower court held that the Division of Election's "good faith" requirement was an unconstitutional additional qualification and there was

The State's interest is balanced against Mr. Day's right to run for office as an independent candidate, the State's requirement to "provide feasible means for other political parties and candidates to appear on the general election ballot," Storer, 415 U.S. at 728, and "the pervasive national interest in the selection of candidates for national office, [which] is greater than any interest of an individual State," Cousins v. Wigoda, 419 U.S. 477, 490 (1975).

The connection between the voter registration restriction and its purported purpose is attenuated.  While the State has an

---

no statutory authority for imposing it as a ballot access restriction.

The Alaska superior court collected cases where courts condoned the removal of candidates' names from the ballot where the candidate sought to alter or obscure their identity in an attempt to confuse voters.  See Sullivan v. State of Alaska, Div. of Elections, No. 3AN-26-07485CI (Alaska Super. Ct. June 26, 2026) (Matthews, J.) at 27-28.  The court distinguished those matters from Mr. Sullivan's case because he used the name he had gone by his whole life.  The court also noted the availability of procedures to distinguish between the candidates on the ballot including name formatting and instructions.

Here, the Secretary provides no support for the proposition that Mr. Day's candidacy is an act of political gamesmanship. The Secretary concedes that Mr. Day is a constitutionally qualified candidate.  He further acknowledges that Mr. Day was at all relevant times domiciled in New Hampshire and attempted to file his Declaration of Intent during the statutory period. Mr. Day also indicated at the hearing that he is close to amassing the requisite number of signatures required to file his Nomination Papers, demonstrating support for his candidacy.  See RSA 655:42, I (establishing required number of signatures). Accordingly, the Sullivan matter illuminates an important point: the Secretary's proffered rationale for imposing a voter registration restriction is not applicable to Mr. Day's candidacy.

interest in regulating its elections, preventing political gamesmanship, and precluding frivolous candidates, the connection between these interests and voter registration do not "make it necessary to burden the plaintiff's rights." Anderson, 460 U.S. at 789. Mr. Day seeks to run for United States Senate; a state-wide election. Consequently, the "wait-and-see" concern does not support barring Mr. Day from the ballot. As for the second rationale, preventing candidates whose only goal is to "damage another candidate," the record contains no information indicating that is Mr. Day's intention. The Secretary concedes that Mr. Day is a constitutionally qualified candidate. He further acknowledges that Mr. Day was at all relevant times domiciled in New Hampshire and attempted to file his Declaration of Intent during the statutory period. Mr. Day also indicated at the hearing that he is close to amassing the requisite number of signatures required to file his Nomination Papers, establishing the support for his candidacy. See RSA 655:42, I. Further, the Secretary does not articulate a sufficient connection between voter registration and legitimacy of candidacy. The Secretary fails to demonstrate how a voter registration requirement achieves its purported goals and rationalizes burdening Mr. Day's rights. See Campbell, 233 F.3d at 1233 ("The Colorado [voter] registration requirement does not advance ballot housekeeping by limiting access to the ballot

17

based on electoral support; instead, it limits access based on other exclusionary measures.").

In conclusion, Mr. Day has demonstrated a likelihood of success at establishing that the Secretary's interpretation of RSA 655:17-a to require candidates for United States Senate to be registered New Hampshire voters is an unconstitutional additional qualification for office and, alternatively, a ballot access restriction that imposes a substantial burden on Mr. Day's federal rights and freedoms that outweighs the State's interests in preventing potential political gamesmanship.  For those reasons, Mr. Day is likely to succeed on his federal claims.

The court declines to address Mr. Day's state law claims having concluded that he demonstrated a likelihood of success on his federal law claims.  See Francisco Sanchez v. Esso Std. Oil Co., 572 F.3d 1, 15 (1st Cir. 2009) ("[I]t is inappropriate for the court, at or after a preliminary injunction hearing, to 'make findings of fact or conclusions of law that go beyond what is necessary to decide whether a preliminary injunction should be issued.'" (quoting 11A Wright, Miller, & Kane, Federal Practice and Procedure S 2950)).

II.  Remaining Factors for Preliminary Relief

A.   Irreparable Harm

The court briefly addresses the three remaining prongs of

18

the preliminary injunction analysis.  Absent a preliminary injunction, Mr. Day is likely to face irreparable harm.  Given the impending September 2, 2026 Nomination Papers deadline[6] and the November 3, 2026 general election[7], Mr. Day would be barred from appearing on the ballot if not granted interim relief.  See Lubin, 415 U.S. at 719 ("The realities of the electoral process . . . strongly suggest that 'access' via write-in votes falls far short of access in terms of having the name of the candidate on the ballot.").

B.    Balance of Equities

The balance of equities also tips in Mr. Day's favor.  A balance of equities "explore[s] the relative harms to applicant and respondent, as well as the interest of the public at large." Trump v. Int'l Refugee Assistance Project, 582 U.S. 571, 580 (2017).  The Secretary's refusal to accept Mr. Day's Declaration of Intent is not constitutionally sound.  There is no equitable consideration in the Secretary's favor especially where he does not contend that Mr. Day's candidacy is the type of political gamesmanship the voter-registration-where-domiciled restriction is purportedly designed to avoid.  Mr. Day, however, has a weighty equitable interest in preserving his right to access the

---

[6] See RSA 655:43, I (establishing nomination papers deadline).

[7] See 2 U.S.C. § 7 (establishing date of the general election).

19

ballot.  And, as discussed below, the public's interest favors injunctive relief.

    C.    <u>Public Interest</u>

Finally, issuing the preliminary injunction serves the public interest.  See Libertarian Party of N.H. v. Sununu, No. 20-cv-688-JL, 2020 WL 4340308, at *21 (D.N.H. July 28, 2020) ("[W]hen a constitutional violation is likely, . . . the public interest militates in favor of injunctive relief because it is always in the public interest to prevent violation of a party's constitutional rights." (citing ACLU Fund of Mich. v. Livingston Cnty., 796 F.3d 636, 649 (6th Cir. 2015))).  The citizens of New Hampshire are entitled to select from the group of qualified candidates for United States Senate who satisfy the constitutional requirements to be placed on the ballot.  See Thornton, 514 U.S. at 820-21 (recognizing that "the right to choose representatives belongs not to the States, but to the people").

The injunction the court recommends the district judge grant is a mandatory one, requiring affirmative action by the non-moving party.  "Because a mandatory injunction alters rather than preserves the status quo, it 'normally should be granted only in those circumstances when the exigencies of the situation demand such relief.'"  Braintree Lab'ys, Inc. v. Citigroup Global Markets Inc., 622 F.3d 36, 41 (1st Cir. 2010) (quoting

20

Mass. Coal. Of Citizens with Disabilities v. Civil Def. Agency,
649 F.2d 71, 76 n.7 (1st Cir. 1981)).  The exigencies of the
circumstances——the impending September 2 Nomination Papers
deadline and the November 3 election——in conjunction with the
demonstrated likelihood that the Secretary's interpretation of
RSA 655:17-a is unconstitutional, warrant the issuance of a
mandatory preliminary injunction.  Cf. New England Synod v.
Dept. of Homeland Sec., 824 F. Supp. 3d 118, 168-69 (D. Mass.
2026) (issuing a preliminary mandatory injunction to protect
against further injury to plaintiffs' religious freedoms).

Conclusion

For the foregoing reasons, the district judge should grant
Mr. Day's motion for preliminary injunction (Doc. No. 6) and
order the Secretary to accept Mr. Day's Declaration of Intent
and include him on the ballot if he is otherwise eligible.

Any objections to this Report and Recommendation must be
filed within seven days of receipt of this notice.  Fed. R. Civ.
P. 72(b)(2); Doc. No. 11 (containing the parties' stipulation to
a seven-day objection window).[8]  Failure to file an objection
within the specified time waives the right to appeal the
district court's Order.  See Santos-Santos v. Torres-Centeno,
842 F.3d 163, 168 (1st Cir. 2016).  Only those issues raised in

---

[8] The parties also stipulated to a seven-day reply window.

21

written objections to this Report and Recommendation "are subject to review in the district court," and any issues "not preserved by such objection are precluded on appeal." Id. (citations omitted).

Andrea K. Johnstone
United States Magistrate Judge

August 13, 2026

cc:  Aaron R. Day, pro se
     Counsel of Record

22