**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| Aaron Ross Day,<br>Plaintiff,<br><br>v.<br><br>David M. Scanlan, in his official capacity as New Hampshire Secretary of State,<br><br>Defendant. | Civil Action No.<br>1:26-cv-00499-LM-AJ |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S OBJECTION TO THE REPORT AND RECOMMENDATION AND REQUEST FOR PROMPT ADOPTION**

Plaintiff Aaron Ross Day, appearing pro se, respectfully responds to Defendant's Objection to the Magistrate Judge's Report and Recommendation (Doc. 13) and states as follows:

**INTRODUCTION**

The Magistrate Judge took this case on facts the Secretary stipulated, heard argument, and reached the same conclusion as every federal appellate court to address a candidate voter-registration requirement: a State may not condition a candidacy for United States Senate on voter registration. The Secretary's Objection (Doc. 13) re-argues the same characterization this Court already had before it in Doc. 10, and does not identify error in the Report's independent, alternative holding. As the Report puts it, "citizens of New Hampshire are entitled to select from the group of qualified candidates for United States Senate who satisfy the constitutional requirements to be placed on the ballot." Doc. 12 at 20.

**I. STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 72(b)(3), the Court reviews de novo only those portions of the Report to which a proper written objection has been made; unobjected portions are reviewed, at most, for clear error. As the Report itself advised the parties: "[o]nly those issues raised in written objections . . . are subject to review in the district court," and issues "not

preserved by such objection are precluded on appeal." Doc. 12 at 21-22 (citing Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016)). A party likewise may not present to the district judge arguments it never raised before the magistrate judge. Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 990-91 (1st Cir. 1988).

Measured against that standard, the Objection contests the Report's characterization holding (Part I.A) and the equities. It does not renew the threshold defenses argued in Doc. 10, and, as explained in Part II below, it does not identify any error in the Report's independent alternative holding (Part I.B).

## II. THE OBJECTION DOES NOT IDENTIFY ANY ERROR IN THE REPORT'S INDEPENDENT ANDERSON-BURDICK HOLDING, AND THAT HOLDING IS CORRECT IN ANY EVENT.

The Report rests on two independent grounds.

Ground A (Doc. 12, Part I.A, at 6-14): the voter-registration-where-domiciled requirement, as applied to Mr. Day, is a qualification barred by U.S. Const. art. I, § 3, cl. 3. U.S. Term Limits, Inc. v. Thornton, 514 U.S. 779, 806, 831 (1995); Campbell v. Davidson, 233 F.3d 1229, 1233-35 (10th Cir. 2000); Tex. Democratic Party v. Benkiser, 459 F.3d 582, 589-90 (5th Cir. 2006); Schaefer v. Townsend, 215 F.3d 1031, 1036-38 (9th Cir. 2000). The Report described the "striking unanimity" of this authority and recorded that the Secretary "was unable to provide authority" to the contrary. Doc. 12 at 12.

Ground B (Doc. 12, Part I.B, at 14-18): even if the requirement were treated as a ballot-access restriction, "the outcome would be the same": the wait-and-see rationale cannot reach a statewide race; the record contains no evidence of gamesmanship; and the Secretary concedes Mr. Day is a constitutionally qualified candidate, domiciled in New Hampshire at all relevant times, who attempted to file within the statutory period. Doc. 12 at 16-17.

The Objection does not identify any error in Part I.B's specific findings. It never cites Anderson v. Celebrezze, 460 U.S. 780 (1983), by that name; it never cites Part I.B or Doc. 12 at 14-18; and it never engages, on its own terms, the Report's finding that there is no evidence of gamesmanship on this record, that a wait-and-see rationale fails in a statewide race with no district to shop, or the Secretary's own concession that Mr. Day is constitutionally qualified. Instead, paragraphs 14 through 16 re-assert the same general interest, preventing candidates from "playing games with the State's elections," that Part I.B already considered and found attenuated on this record. Doc. 12 at 16. Repeating that interest does not rebut those findings.

At a minimum, the Report's specific findings, that there is no evidence of gamesmanship on this record and no district to shop in a statewide race, stand effectively unrefuted.

Even if the Court reaches Part I.B de novo, it should reach the same conclusion the Report did. The Objection's theory is that a registration deadline is prophylactic, that the State need not show gamesmanship by Mr. Day in particular because the requirement guards against gamesmanship by candidates generally. That theory does not survive this record. A prophylactic rule still has to fit the harm it targets. The wait-and-see scenario the Objection describes, a candidate deciding which race to enter after watching who else declares, has no purchase in a statewide election for a single seat: there is no second district to shop, and the record contains no evidence that Mr. Day engaged in such conduct. Doc. 12 at 16-17. And on the Secretary's own account of the facts, the requirement does not even filter for the timing it claims to police. The Nashua Board of Registrars' last meeting before the June 3 filing period was the evening of June 2. Doc. 13 ¶ 14. A candidate who happened to be registered in the right ward before June 2 faced no barrier; Mr. Day, who was continuously registered in Bedford and submitted his Nashua registration the same day as the first rejection, was barred regardless of intent, because the board that had to act on his transfer never met. Doc. 7 ¶ 20. That poor fit substantially weakens the asserted interest as applied to Mr. Day. Finally, the Secretary concedes Mr. Day is a constitutionally qualified candidate, domiciled in New

Hampshire at all relevant times, who attempted to file within the statutory period, Doc. 12 at 17, which forecloses the gamesmanship narrative on this plaintiff regardless of its force in the abstract.

**III. THE OBJECTION'S MERITS ARGUMENTS FAIL.**

The Objection's central contention (¶ 13) is that whether a ballot-access provision violates the Qualifications Clause "turns on whether the restriction furthers the legitimate state goals" described in Thornton, 514 U.S. at 834. That converts Thornton's description of why genuinely procedural regulations survive into a balancing test for provisions that operate as qualifications. Thornton does not authorize that test; it forecloses it. The passage the Objection relies on sits in the majority's survey of Storer and the other Elections Clause cases, and the majority's next words explain why those cases cannot help the Secretary: they "were thus constitutional because they regulated election procedures and did not even arguably impose any substantive qualification rendering a class of potential candidates ineligible for ballot position." 514 U.S. at 835. The same passage then rejects the Objection's proposed test in terms: the procedural cases "provide little support for the contention that a state-imposed ballot access restriction is constitutional when it is undertaken for the twin goals of disadvantaging a particular class of candidates and evading the dictates of the Qualifications Clauses." Id. Arkansas defended its measure as a furtherance of legitimate state interests, and it lost. The Report applied the same sequencing here: because the requirement operates as a qualification, "this court need not subject the requirement at issue here to a balancing test to determine whether the restriction is unconstitutional." Doc. 12 at 13 (citing Schaefer, 215 F.3d at 1037-38, which explains that Thornton "held the balancing test [under which a court would consider the State's interest] inapplicable where the challenged provision supplemented the Qualifications Clause"). There is no "furthers state goals" test for RSA 655:17-a to pass.

The rest of Part I of the Objection re-argues Doc. 10. The requirement is "expressly a process," the Objection says (¶ 12), citing Anderson footnote 9 and Storer v. Brown. The Report

answered by category, not by label: the cited cases address procedural steps open to any candidate (filing windows, signatures, disaffiliation), while registration-where-domiciled "relates personally to the candidate and targets a status unrelated to party affiliation or popular support." Doc. 12 at 12. Status, not step. Anderson's footnote 9 approves a showing of "substantial support," not proof of registration, and the Report already found Mr. Day close to making that separate showing through his nomination-paper signatures. Doc. 12 at 17 (citing RSA 655:42, I). Registration-where-domiciled measures neither support nor any procedural step; it measures only a status. Storer v. Brown, 415 U.S. 724 (1974), itself illustrates the category: it upheld a prospective conduct rule tied to party affiliation; candidates could comply by disaffiliating at least one year in advance. Id. at 736. Registration-where-domiciled is not a choice a candidate can complete by his own act once the State disputes it; it depends on a third party, the Board of Registrars, acting on the State's own schedule. Across Doc. 10, the hearing, and now the Objection, the Secretary has produced no authority holding otherwise, while every court to decide the question has struck candidate voter-registration requirements down. And the Report's footnote 1 forecloses the statutory escape: the Magistrate Judge adopted the Secretary's own reading of RSA 655:17-a arguendo and struck the requirement anyway.

The Objection's remaining factual assertion (¶ 14) is that the Nashua Board of Registrars, "as with other supervisors," met "the evening of June 2," which "ensured" candidates could register before the filing period began. The generalization about other towns' boards appears nowhere in the stipulated record on which the parties agreed this motion would be decided. What the record does establish is stipulated: the Nashua board met on June 2 and did not meet again between June 3 and June 12, the entire statutory filing window. Doc. 7 ¶ 20. The Report's own recitation of the undisputed facts confirms the same date from the Secretary's side of the correspondence: the Deputy Secretary told Mr. Day that "June 2, 2026, was the last day for you to register as a voter at your current domicile prior to the opening of the candidate filing period on June 3." Doc. 12 at 3. The Secretary's Objection concedes the point in its sharpest

form: on his own telling, and on the Deputy Secretary's own telling, the registration gate closed the night before the statutory filing window, RSA 655:14 / 655:14-a, even opened. The Nashua Board of Registrars did not meet again during the entirety of the ten-day filing period that followed, so no registration could be completed through that board during the window. RSA 655:14 establishes the June 3-12 filing period, and RSA 655:14-a requires the declaration during that period; neither establishes a June 2 registration deadline. The June 2 cutoff is the Nashua Board's own meeting schedule, not a legislative rule. That is not an even-handed procedural step available to any candidate during the filing period; it is a fixed, pre-existing status the candidate either has or lacks before the window ever opens. Doc. 12 at 11-12.

One citation in the Objection warrants a note. The Objection (¶ 11), like the Secretary's earlier briefing (Doc. 10 ¶ 15), cites RSA 665:3 as New Hampshire's codification of the federal qualifications. RSA 665:3 addresses political contributions in connection with the Ballot Law Commission. The provision the Secretary appears to intend is RSA 655:3, "United States Senator," quoted at Doc. 12 at 5: a candidate "must be qualified as provided in Article 1, section 3 of the federal constitution." The State's own statute thus closes the list at the Constitution's three qualifications.

## IV. EVERYTHING ELSE IS ABANDONED OR CONCEDED.

1. Threshold defenses. Doc. 10 argued a state jurisdictional bar (RSA 665:7), the Eleventh Amendment, the absence of a federal right, and causation. The Objection does not renew any of them, and they are not properly before the Court on this objection. Santos-Santos, 842 F.3d at 168; Doc. 12 at 4 & n.3.

2. Irreparable harm. The Objection does not meaningfully contest irreparable harm. It argues only that the balance of equities and public interest favor the State "[e]ven assuming Plaintiff has demonstrated that he would suffer irreparable harm." Doc. 13 ¶ 17. The Report's harm finding is grounded in the September 2, 2026 certified-nomination-papers

deadline, RSA 655:43, I, and the November 3 election, and it stands unobjected. Doc. 12 at 18-19.

3. Contrary authority. The Secretary has not cited any decision upholding a voter-registration requirement for congressional candidates. Doc. 12 at 12.

4. Equities and the public interest. The Objection's equities argument reduces to the observation that a State is injured when its statutes are enjoined. A State has no legitimate interest in enforcing a restriction the Constitution forbids, and the Report weighed the public's interest on the record before it: New Hampshire voters are injured when a qualified candidate is excluded from the ballot. Doc. 12 at 19-20 (citing, inter alia, Libertarian Party of N.H. v. Sununu, No. 20-cv-688-JL, 2020 WL 4340308, at *21 (D.N.H. July 28, 2020)). That interest is not abstract: the Report found Mr. Day close to amassing the signatures required to file his nomination papers, establishing the support for his candidacy, Doc. 12 at 17 (citing RSA 655:42, I), and the Objection identifies no candidate-specific administrative burden that outweighs that demonstrated public support.

5. Remedy. The Objection does not challenge the scope of the recommended injunction or its "if he is otherwise eligible" condition. Any doubt on that condition is now resolved: Plaintiff's campaign has retrieved and counted certified nomination papers bearing 3,213 certified signatures, more than 1,500 from each congressional district, exceeding the requirements of RSA 655:42, I. See Second Supplemental Declaration of Aaron Ross Day (filed herewith); Doc. 12 at 17 (noting Mr. Day was close to amassing the required signatures and citing RSA 655:42, I).

6. Mandatory-injunction standard. The Objection's Standard of Review recites the heightened showing required for a mandatory injunction that alters rather than preserves the status quo. Doc. 13 ¶ 8 (citing Braintree Lab'ys, Inc. v. Citigroup Global Markets Inc., 622 F.3d 36, 41 (1st Cir. 2010)). The Report applied that same standard and found the exigencies of

the September 2 nomination-papers deadline and the November 3 election sufficient to warrant mandatory relief. Doc. 12 at 20-21. The Objection does not contest that application.

**V. CONCLUSION**

The Report should be adopted on both of its independent grounds, not one alone. The Objection identifies no error in Part I.B's specific findings, and those findings are correct in any event. Part II, supra. Nor does the Objection identify any authority for treating New Hampshire's registration-where-domiciled requirement as anything other than the added qualification every court to reach the question has found it to be. Part III, supra. The parties' stipulated schedule (Doc. 11) was adopted precisely so this Court could act inside the September 2, 2026 certified-nomination-papers deadline (RSA 655:43, I); prompt adoption is the relief that schedule contemplates. Aaron Day is one of those qualified candidates. Nothing in the Objection says otherwise.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court:

A. Overrule Defendant's Objection (Doc. 13);

B. Adopt the Report and Recommendation (Doc. 12) and enter the preliminary injunction promptly; and

C. Grant such further relief as is just and equitable.

Respectfully submitted,

/s/ Aaron Ross Day
Aaron Ross Day, Pro Se
34 Franklin St.
Nashua, NH 03064
617-669-2187
Dated: August 21, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that on this day a copy of the foregoing was served on all parties of record via the Court's electronic filing system.

/s/ Aaron Ross Day
Aaron Ross Day